UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
    DWIGHT EUGENE AVIS                )    Case No. 07-13483-SSM
                                      )    Chapter 11
              Debtor                  )

**MEMORANDUM OPINION**

Before the court is the motion of W. Clarkson McDow, Jr., United States Trustee, Region Four ("U.S. Trustee") to dismiss this chapter 11 case or convert it to chapter 7 based on continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation. A hearing was first held on May 20, 2008. The court declined at that time to dismiss or convert the case and continued the motion to August 12, 2008, to review the debtor's progress. At the August 12th hearing, the debtor testified at length concerning his prospects for reorganization, and the court continued the motion to September 16, 2008, for a ruling. At that hearing, the debtor provided further testimony (largely duplicative of his prior testimony) as well as the statements of a number of creditors whom he had recruited to support his remaining in chapter 11. The court again took the motion to dismiss under advisement and is now prepared to rule.

Background

Dwight Eugene Avis ("the debtor") is a real estate agent. He filed a voluntary petition in this court on November 14, 2007, for reorganization under chapter 11 of the Bankruptcy Code, and has remained in possession of his estate as debtor in possession. On his schedules he listed an interest as joint tenant (with his fiancee, Judith C. Stover) in three parcels of real estate, a

1

condominium unit, and a time-share. The aggregate value of the real estate is shown as $2.9 million, subject to liens totaling $2.4 million.[1] The scheduled unsecured claims total $300,559.

A plan has not yet been proposed. On April 11, 2008, the U.S. Trustee filed the motion that is currently before the court asserting that the significant level of unpaid post-petition expenses—nearly $70,000 at the time the motion was filed—constituted a continuing loss to the estate and justified either conversion to chapter 7 or dismissal. The U.S. Trustee's concerns are vividly illustrated by the monthly operating reports filed by the debtor that reflect a cumulative deficit that is now twice what it was five months ago when the motion was filed:[2]

| Month | Income | Expenses Paid | Cash P/L | Expenses Not Paid | Cumulative Unpaid Expenses |
|---|---|---|---|---|---|
| Dec 2007[3] | $5,473 | $5,239 | $235 | $25,284 | $25,284 |
| Jan 2008 | $8,230 | $5,131 | $3,098 | $22,634 | $47,918 |
| Feb 2008 | $7,136 | $5,543 | $1,593 | $21,952 | $69,870 |
| Mar 2008 | $4,736 | $7,529 | (2,793) | $17,140 | $87,010 |

---

[1] The properties and the liens against them are shown as follows on the schedules:

| Description | Market Value | Liens | Equity |
|---|---|---|---|
| 3012 Fox Mill Rd., Oakton | $1,375,000 | $1,026,695 | $348,305 |
| 10102 Vale Rd., Vienna | $650,000 | $613,742 | $36,258 |
| 1190 Marseille Ln., Woodbridge | $675,000 | $613,346 | $61,654 |
| Condo unit, Bryce | $145,000 | $91,000 | $54,000 |
| Timeshare, Orlando | $48,000 | $25,000 | $23,000 |

[2] The August report was filed after the September 16th hearing.

[3] The initial operating report covered a six and a half-week period from 11/14/07 to 12/31/07.

| | | | | | |
|---|---|---|---|---|---|
| Apr 2008 | $6,292 | $6,689 | (397) | $17,140 | $104,150 |
| May 2008 | $4,836 | $4,174 | $662 | $17,140 | $121,290 |
| Jun 2008 | $4,436 | $5,178 | (742) | $8,390 | $128,680 |
| Jul 2008 | $17,288 | $13,880 | $3,408 | $8,390 | $137,070 |
| Aug 2008 | $34,118 | $26,110 | $8,008 | $8,600 | $145,670 |

The deficits reflect almost entirely monthly mortgage payments that are not being made on the various parcels of real estate. Even these figures, however, do not tell the whole story. The noticeable jump in income for July and August does not consist of earnings but rather of personal loans or gifts to enable the debtor to comply with consent orders that have been entered conditioning the automatic stay on two of the parcels of real property. The loans or gifts totaled $12,000 in July and $29,500 in August. Putting aside such special cash injections, the debtor's only reported income since the filing of the petition has been $46,187 (an average of $4,658 per month)[4] in social security, military retirement, and trust distributions. The debtor has received no real estate commissions during that period.

At the hearings on August 12th and September 16th, the debtor testified both as to the extensive efforts he has made to generate income and the personal distractions and expenses incurred in attempting to deal with his foster daughter's psychiatric problems. The latter issues, he testified, are now behind him, and he testified he has been assiduously pursuing a number of potential sales, which, if they come to fruition, would generate significant income. In addition, he has been pursuing negotiations with a neighboring landowner to sell 1 to 1.5 acres of the Fox Mill Road property, which he believes would net approximately $150,000 to $200,000 and allow

---

[4] The 291 days from the filing of the petition on November 14, 2007, through August 31, 2008 (the end of the reporting period for the most recent report) equates to 9.7 months.

3

him to bring all the mortgages current while he continues to market the properties for sale.  In connection with his activities as a real estate agent, he professed to have seen a turnaround in the market, and he expressed great confidence that, with sufficient time, he could repay his creditors in full.  At the September 16th hearing, one creditor appeared to support conversion to chapter 7 and five (recruited by Ms. Stover) to oppose it.  Four of the five opposing conversion were unsecured creditors who were owed, they stated, a total of $160,000.  They expressed concern that conversion to chapter 7 would eliminate any practical hope of their being paid and they voiced confidence that the debtor, if given sufficient time and opportunity, intended to and would repay them.

<u>Discussion</u>

A.

On request of a party in interest, and after notice and a hearing, a bankruptcy court is required to ("shall") dismiss a chapter 11 case or convert it to chapter 7, whichever is in the best interest of creditors, for cause, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  § 1112(b)(1) and (4)(A), Bankruptcy Code.  If a basis for conversion or dismissal is shown, relief can be denied only if "unusual circumstances [are] specifically identified by the court that establish that such relief is not in the best interest of creditors or the estate" based on a finding that "there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time" and that "a reasonable justification" exists for the acts or omissions that would otherwise support dismissal or conversion, and that the defaults "will be cured within a reasonable period of time fixed by the court."  § 1112(b)(2), Bankruptcy Code.  Even this limited latitude does not apply, however, if

4

the basis for conversion or dismissal is—as in the present case—substantial or continuing loss to or diminution of the estate, coupled with the absence of a reasonable likelihood of rehabilitation. § 1112(b)(2)(B), Bankruptcy Code.

B.

That there has been a continuing loss to or diminution of the estate can hardly be disputed. Each month that goes by without mortgage payments being made reduces the estate's equity in the mortgaged property by the amount of the unpaid interest that has accrued. Even taking the values shown on the schedules for the real properties, roughly $145,000 of $500,000—or 30%—of the equity in the properties has been lost in slightly less than 10 months. And even that may be optimistic, given what appears to have been a continuing decline in real estate values since the filing of the petition. Simply put, the equity that is the only real hope for unsecured creditors to be paid is eroding at an alarming rate.

That leads to the second prong of the inquiry, namely whether there is an absence of a reasonable likelihood of rehabilitation. The test, it must be stressed, it not sincerity or hope. The court readily accepts that the debtor is genuinely exerting his best efforts in a sincere desire to repay his creditors in full. What the court must determine, however, is the objective likelihood that the debtor's financial situation can be turned around. The difficulty is that the debtor's testimony as to his prospects is long on enthusiasm and generalities, and short on details and corroboration. For example, the debtor confidently states that the housing market is beginning to turn around. However, he offers no published statistics to support such an assertion,[5] and has no

---

[5] The Federal Housing Finance Agency's published Monthly Price Index of U.S. homes reflects a drop of 4.45% from November 2007, the month the debtor filed his petition, through August
(continued...)

5

transactions of his own under contract that would demonstrate such a turnaround.  In his August 2008 monthly operating report, he states, "I have some 5-7 buyers who are entertaining buying from $200,000 to $2,000,000 property."  While the identification and cultivation of prospective buyers is obviously important, unless a buyer actually signs a contract, qualifies for a loan, and goes to settlement, the mere existence of a small circle of potential purchasers provides little if any basis for an objective finding that the debtor will more likely than not be able to pay his creditors from his future earnings.

       The court is of course acutely aware that the present economic climate is truly extraordinary.  The melt-down in the subprime mortgage-backed securities market has triggered a world-wide financial crisis of a magnitude that has not been seen since the Great Depression.  And while everyone expects the financial markets eventually to recover, no one can predict with any confidence how long that will take.  Given the rehabilitative goal of chapter 11, there is certainly strong justification to allow the debtor some reasonable breathing space while the economy sorts itself out.  After all, the debtor has been successful in the past, and there's no reason to suppose he won't be successful in the future, at least if one looks far enough out.  The problem is that in the short term, it is wholly possible that whatever equity the debtor may have in the real property will be largely or entirely eroded.  A chapter 11 debtor in possession is a fiduciary for his creditors and should not be gambling with the assets of the estate.  At the same

---

[5](...continued)
2008.  *See* http://www.fhfa.gov/hpi.aspx (visited October 30, 2008).  The Washington Post recently reported statistics from the National Association of Realtor and the U.S Department of Commerce showing that sales of existing houses rose 5.5% in September 2008 and new home sales rose 2.7%. *See* http://www.realtor.org/research/research/ehsdata and click on Existing-Home Sales Overview and http://www.census.gov/const/newsressales.pdf (both visited October 30, 2008).

time, it is far from clear how conversion to chapter 7 would leave the creditors better off. A chapter 7 trustee would have even fewer resources than the debtor for making monthly mortgage payments and no better prospects of effecting a quick sale. No one has suggested that the debtor is not making responsible efforts to market the property: the problem appears to be the economy.

At the same time, chapter 11 was never intended to be a way of life. Just how long a debtor should be permitted to remain in chapter 11 while waiting for the economy (or the debtor's troubled segment of it) to turn around will obviously depend on all the circumstances. The two most compelling factors in most cases will be (1) the willingness of the creditor body to work with the debtor and to give him additional time and (2) the degree of financial hemorrhaging. If a debtor is at least treading water on a cash flow basis, heavy weight should no doubt be given to creditor sentiment in favor of letting the case continue in chapter 11. But where a debtor is losing money at a significant rate, creditor sentiment, while entitled to respectful consideration, will weigh considerably less in the balance. Here, there is no question that the debtor is continuing to operate in the red. Although his two most recent monthly operating reports purport to show otherwise, they avoid a negative bottom line only by counting as "income" $41,500 in loans or gifts from a third party. Without those, the results would have been as bad as the previous months. That stark reality weighs heavily against a finding that the debtor has a reasonable likelihood of proposing a confirmable plan within a reasonable period of time.

Still, given the level of creditor support, the court is willing to give the debtor a brief additional period of time to demonstrate that a plan is likely to be confirmed. Specifically, the court will require that the debtor (a) file a proposed plan and disclosure statement not later than

December 19, 2008; (b) notice a hearing on approval of the disclosure statement to be held not later than January 20, 2009; and (c) obtain confirmation of a plan not later than March 10, 2009. If any of these conditions are not met, the case will be dismissed *if* monthly operating reports and quarterly U.S. Trustee fees are current; otherwise the case will be converted to chapter 7.

A separate order will be entered consistent with this opinion.

Date: _____            _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge


Copies to:

Dwight Eugene Avis, Jr.
P.O. Box 1416
Vienna, VA 22183-1416
Debtor in possession

Steven B. Ramsdell, Esquire
Tyler, Bartl, Ramsdell & Counts, PLC
700 S. Washington St., Suite 216
Alexandria, VA 22314
Counsel for the debtor in possession

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA 22314